U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB 2 2 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

VANDA WILLIS

CIVIL ACTION NO. 11-1705

versus

JUDGE TOM STAGG

CLECO CORPORATION

## MEMORANDUM RULING

Before the court is the second motion for summary judgment filed by the defendant, Cleco Corporation ("Cleco"), seeking dismissal of all remaining claims alleged by the plaintiff, Vanda Willis ("Willis"). See Record Document 119. Based on the following, Cleco's second motion for summary judgment is **GRANTED**.

## I. BACKGROUND[1]

Originally, Willis, along with twelve other current and former African-American employees of Cleco, brought an action against Cleco, alleging, inter alia, race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, Section 1981 of the United States Code, the Louisiana Employment Discrimination Law, and the Louisiana Commission on Human Rights. See Record

---

[1]Much of the background is adopted from the court's previous summary judgment ruling. See Record Document 105.

Documents 1, 5 and 25. The court ruled on Cleco's first motions for summary judgment as to all the plaintiffs, and the remaining causes of action were severed. See Record Document 115. Regarding the first motion for summary judgment as to the claims of Willis, the court dismissed her wrongful suspension claims with prejudice. See Record Document 106. Her state law failure to promote claims and her section 1981 failure to promote claim arising from 2004 were also dismissed with prejudice. Her Title VII claims were dismissed without prejudice. See id. The court now addresses Willis's remaining section 1981 failure to promote claims arising from 2005 and 2007.

Beginning in May of 1998, Willis worked a temporary position at Cleco as a fuel accountant until September of 1998, when she obtained a permanent position as a rate analyst. See Record Document119, Ex. A at 20-28. Her responsibilities included the fuel cost report, which determined the amount that Cleco actually paid for fuel in the operation of its power plants, as well as some accounting and monitoring of reports. She later became a credit representative in the Customer Revenue Department, which included the new responsibilities of handling credit complaints from customers and monitoring reports. The department later changed to the Department of Credit and Collections. Willis received a promotion within the department and assumed the title of Quality Assurance Coordinator. Her duties

2

included credit reporting, collections, and creating policies and procedures. However, in April of 2005, the department underwent a reorganization and her position was eliminated. She received a salary cut and was demoted to a position as a Senior Credit Representative. Her duties remained virtually the same; however, she no longer possessed the responsibilities of a coordinator. See id.

In May and December of 2005, Cleco posted two openings for Financial Accountant positions. See id., Exs. B at 2 and B-2. The positions required the minimum qualification of a bachelor's degree in a business-related field with Certified Public Accountants ("CPA") and advanced degrees being preferred. See id., Ex. B-2. Duties consisted of, inter alia, preparing and filing SEC reports, assisting in the coordination of the overall accounting closing process, communicating the statuses of closings to the manager, participating in reasonableness and variance checks of financial numbers, performing a detailed analysis of financial information to ensure accuracy and consistency with regulatory filings, and preparing debt covenants.[2] See id.

---

[2]Willis denies that the posted Financial Accountant positions "required these descriptions." Record Document 126, Declaration of Vanda Willis at ¶ 28. The only evidence Willis presents to contest this is her own self-serving testimony. However, the court discovered through its own efforts that Willis's Exhibit E contains a different posting for the position from that produced by Cleco. The former does not contain detailed information regarding the position as does the posting produced by Cleco in Cleco's Exhibit B-2. Willis's exhibit instead states that employees with at least eighteen months of experience in their current

According to Rebekah Spring ("Spring"), Director of Employee Relations, Willis applied for the May position but did not apply for the December position. See id., Ex. B at 2. Willis asserts that she did submit an application for the December position. See Record Document 126, Declaration of Vanda Willis at ¶¶ 31 and 32. Scott Kelly, Lead Accountant, assumed the May position on October 22, 2005.[3] See Record Document 119, Exs. B at 1 and B-4. His past experience included, among other positions, Chief Financial Officer of Bunkie General Hospital, Financial Manager of Merrick Construction, Co., and an accountant for a CPA firm. See id., Ex. C. Lacy Blackmon was given the December position on January 24, 2006. She possessed a bachelors degree in accounting, had taken courses towards a masters in accounting, and worked as a tax accountant for her previous employer. According to Spring, Willis was not considered for the December position because she did not submit an application form for that position. See id., Ex. B at 2.

In 2007, Cleco posted openings for two Financial Accountant positions. See

_____

positions were eligible to respond. Although Willis may believe that this evidence contradicts the contents of the job posting presented by Cleco, the court disagrees. The court views the two documents not as contradicting one another, but as one that has a general description and one that has a more specific description of the position.

[3]Willis summarily denies the position was filled in October and claims that it was filled in December. See Record Document 126, Declaration of Vanda Willis at ¶ 41. She has not demonstrated any personal knowledge to support that assertion.

4

id. at 3.  Christina McDowell ("McDowell"), Manager-Financial Accounting & Reporting, was responsible for filling these positions and met with Willis to discuss her accounting experience.  Willis advised McDowell that she only had taken a few accounting classes.  The position was offered to Amy Mabou, a Caucasian female, who possessed a bachelors degree in accounting and had three years prior experience with KPMG, LLP as a Senior Assurance Associate, where she was responsible for supervising audit staff.  See id., Ex. D at 1-2.  The second position was offered to Tonya Nash, an African-American female, who had been working in Accounting Services at Cleco since 2000, but she declined the offer.  Subsequently, after reevaluating the need for the position, McDowell decided that there was enough staff to meet existing needs.  See id.

Cleco also posted an opening for a Tax Accountant position in 2007.  See id., Ex. B at 3.  Duties and knowledge requirements included:  collecting, analyzing, and summarizing financial information to meet income, franchise sales and use, and property tax reporting requirements; assisting in tax audits; an understanding of generally accepted accounting principles ("GAAP"); an understanding of federal, state, and local tax regulations; and registering various entities with secretaries of state and departments of revenue.  See id., Ex. B-6.  According to Spring, Willis did not apply for this position and only Scott Kelly applied.  However, Willis states in her

5

deposition she did apply and also states that a Caucasian female was promoted to the position.  See id., Exs. A at 118-119 and B at 3.  Contrary to Willis's statement, however, evidence produced by Cleco shows that Scott Kelly was the one who received the promotion and not a Caucasian female.[4]  See id., Exs. B at 3 and B-9.

In October of 2007, Cleco posted an opening for an energy position.  See id., Ex. B at 3.  Duties included:  verifying, confirming, and reconciling Front Office deals daily; communicating with counter parties on a weekly basis to complete sales/purchase checkouts; detecting, researching, and correcting errors in conformance with back office policies; and reconciling and valuing gas imbalances to pipeline imbalance statements monthly.  See id., Ex. B-8.  The position further required a bachelors or masters in accounting or a CPA.  Cindy Perdue, Manager - Asset and Energy Accounting, promoted Kristi Ferguson to the position.  Ferguson had been employed in the Accounting Services lines of business and had worked in various accounting roles previously while at Cleco.  See id., Ex. E at 1-3.

According to Cleco, Willis claims she was denied promotions to the two Financial Accountant positions in 2005 and was denied promotions to two more

_____

[4]After looking at the record, it appears that Willis is confused as to who was hired for each position.  In fact, despite what she said in her deposition, she admits in her statement of material facts that she did not apply for the Tax Accountant position and that Scott Kelly was the one promoted.  See Record Document 126, Statement of Material Facts at ¶ 29, 30.

Financial Accountant positions in 2007.  She additionally claims she was denied promotions to the positions of Tax Accountant and Energy Accountant in 2007. Willis only maintains that she was denied several promotions because of her race.

## II. ANALYSIS

### A.    Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004).  If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004).  Where critical evidence is so weak or tenuous on an essential fact that it could

---

[5]The court notes that amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.     Failure To Promote.**

Willis claims that Cleco failed to promote her in 2005 and 2007 because of her race, in violation of 42 U.S.C. § 1981. See Record Documents 1 and 5. Cleco argues that Willis's section 1981 claims are prescribed under Louisiana's one-year prescriptive period and, otherwise, have no merit. Willis maintains that her 2005 and 2007 promotion claims, filed pursuant to section 1981, have not prescribed.[6]

**1.     Statute Of Limitations.**

Section 1981 does not contain a statute of limitations. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839 (2004). When a federal statute does not contain a statute of limitations, courts should apply "the most

---

[6] The prescriptive period for employment discrimination claims in Louisiana is one year. See La. R.S. 23:303(D); Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ., 579 F.3d 546, 552 (5th Cir. 2009). She filed this action on December 11, 2009. See Record Document 1. None of her promotion claims occurred within the one-year period and her claims under Louisiana law are clearly prescribed.

8

appropriate or analogous state statute of limitations." Id. Under Louisiana law, "[a] section 1981 claim is best characterized as a tort . . . and is, therefore, governed by the one year prescriptive period for delictual actions dictated by [Louisiana Civil Code article] 3492." Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985). However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations. See 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989). Section 1981 "did not protect against harassing conduct that occurred after the formation of the contract." Jones, 541 U.S. at 372, 124 S. Ct. at 1840 (citing Patterson, 491 U.S. 164, 109 S. Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. See id. Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section

9

1981 or is only made possible by the 1991 amendments. See id. at 382, 124 S. Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one year. See id. at 371, 124 S. Ct. at 1839; Taylor, 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. See Jones, 541 U.S. at 382, 124 S. Ct. at 1845.

Failure to promote claims were actionable under section 1981, prior to the 1991 amendments, if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." Patterson, 491 U.S. at 185, 109 S. Ct. at 2377. As the Supreme Court explained in Patterson, "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under [section] 1981." Id. "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." Police Assoc. of New Orleans v. City of New Orleans, 100 F.3d 1159, 1170-71 (5th Cir. 1996). If the new position involves "substantial changes," the failure to promote claim was available under

10

section 1981 prior to the 1991 amendments and Louisiana's one-year prescriptive period applies. See id.; see also Fonteneaux v. Shell Oil Co., 289 F. App'x 695, 699 (5th Cir. 2008). Otherwise, the claim is only available under section 1981 as amended and the four-year statute of limitations applies. See id.

Cleco argues that the Financial Accountant, Tax Accountant, and Energy Accountant positions would have resulted in substantial changes to Willis's job responsibilities. To demonstrate the contrast between Willis's job as a Senior Credit Representative and the jobs for which she applied (or did not apply), Cleco lists the duties of the Senior Credit Representative job and the duties of the other positions and then notes the contrast.

Willis counters by arguing that she asserted section 1981 discrimination, retaliation, and hostile environmental claims and that they were made possible by the 1991 Amendments. While what Willis states is true, her discrimination and retaliation claims were dismissed on Cleco's first motion for summary judgment and, regardless, have no bearing on the issue presently before the court. See Record Document 105 and 106. Willis then concludes that her failure to promote claims are based on her current employment contract with Cleco.

Of the two arguments, the court finds Cleco's argument to be the more convincing one. Willis's current position and the promotional positions had different

11

titles with substantially different qualifications and responsibilities.  As a result, her failure to promote claims arise under section 1981 prior to the 1991 Amendment, and therefore, Louisiana's one-year prescriptive period applies.

The latest date that any of her claims arose was in 2007.  She filed her complaint more than one year later on December 11, 2009.  See Record Document 1. Accordingly, all of Willis's failure to promote claims have prescribed under Louisiana's one-year prescriptive period.

### 2.    Merits Of Failure To Promote Claims.

Assuming, arguendo, that Willis had brought her claims in a timely manner, her claims still fail on the merits.

### a.    Prima Facie Case.

"An employee can prove discrimination through direct or circumstantial evidence." Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005). For cases of discrimination based on circumstantial evidence, the court applies the McDonnell Douglas burden-shifting analysis.[7]  See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

---

[7]Claims of employment discrimination brought pursuant to section 1981 are analyzed under the same standards as Title VII claims.  See Decorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007).

12

> To survive summary judgment under <u>McDonnell Douglas</u>, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.  If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.[8]

<u>Davis</u>, 383 F.3d at 317 (citations omitted).

Willis denies Cleco's assertion that she does not have direct evidence of racial discrimination, and she merely cites to her Exhibit E in support.  <u>See</u> Record Document 126, Statement of Material Facts at ¶ 43. Exhibit E contains printed emails regarding individuals who expressed interest in certain promotional opportunities within Cleco.  These emails contain handwritten notes indicating a candidate's race, sex, and age.  This is a far cry from being direct evidence.  "Direct evidence is evidence which if believed, proves the facts without inference or presumption." <u>Jones</u>, 427 F.3d at 992. This is quintessential circumstantial evidence.  Furthermore, contrary to her position, Willis states in her brief that "[t]he <u>implication</u> in Defendant's action is that Plaintiff Willis was a victim of invidious discrimination in

_____

[8]"[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false." <u>Crawford v. Formosa Plastics Corp.</u>, 234 F.3d 899, 903 (5th Cir. 2000) (citations and quotations omitted).

13

all interviews she attended." Record Document 126, Memorandum in Opposition at 8 (emphasis added). The court also finds it worthy to note that despite Willis's contention that she has produced direct evidence, she proceeds to make her case under the McDonnell Douglas framework, which is the test used for circumstantial evidence. Accordingly, the court will conduct its analysis under McDonnell Douglas.

To establish a prima facie case of race discrimination based on a failure to promote, the plaintiff must demonstrate:

> (1) that the employee is a member of [a] protected class; (2) that [she] sought and was qualified for the position; (3) that [she] was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications.

Davis, 383 F.3d at 317 (citations omitted).

Willis cannot demonstrate a primate prima facie case with respect to any of the 2007 positions because she was not qualified for those positions. Prior to 2007, being a CPA or possessing an advanced accounting degree was preferred for positions within Cleco's Accounting Services lines of business. See Record Document 119, Ex. B at 2-3. In July of 2007, Cleco implemented a new policy that required candidates of a professional position in its Accounting Services lines of business to possess an accounting degree or a masters degree in accounting or be a CPA or be

14

eligible to sit for the CPA exam.[9] There was an exemption from this requirement for

Cleco employees who already worked in Accounting Services, as those employees

were grandfathered in. See id. Willis concedes that she does not have an accounting

degree or a masters in accounting and that she is not a CPA or eligible to sit for the

CPA exam. See Record Document 126, Statement of Material Facts at ¶ 17; see also

Record Document 119, Statement of Material Facts at ¶ 17 and Ex. A at 8-9, 119.

The record also does not indicate that she fit the exemption from those requirements.

Willis was clearly not officially qualified for these positions according to the job

posting. Therefore, she has failed to establish the second element of her prima facie

case for the 2007 positions.[10]

---

[9]Willis summarily denies this fact in her statement of material facts. She specifically states, "[d]efendants' declarations contradict the requirements listed on the application form." Record Document 126, Statement of Material Facts at ¶ 18. As proof, she cites to her own declaration which states the same. The court is unsure of what "form" Willis speaks. The only form the court discovered was the one in Willis's Exhibit E regarding the 2005 Financial Accountant positions, and the court will not search through the entire record in an effort to find what plaintiff's counsel failed to present. "[Rule 56] does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996) (citing Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994)). As this has nothing to do with requirements for the 2007 position, Willis's denial is without merit.

[10]Willis admits in her statement of material facts that she did not submit an application for the 2007 Tax Accountant position. See Record Documents 119, Statement of Material Facts at ¶¶ 29-30 and 126, Statement of Material Facts at ¶¶ 29-30. Accordingly, she has not made her prima facie case for her claim regarding that position.

### b.    Pretext.

If Willis were able to establish a prima facie case for any of her claims, they would still fail on the issue of pretext. As previously mentioned, once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for the adverse employment action. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007). Cleco has clearly met its burden by stating that the candidates who received the promotions were more qualified than Willis. Now the burden shifts to Willis to demonstrate that Cleco's legitimate reason was pretextual.

"To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." Id. "A plaintiff may establish pretext 'by showing that a discriminatory motive more likely motivated'" his employer's decision by such evidence as disparate treatment, or that the employer's explanation is unworthy of credence. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001) (quoting Defenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 589 (5th Cir. 1998)). When conducting a pretext analysis, the court is not to engage in second-guessing an employer's business decisions. See LeMaire v. La. Dept. Of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007). Anti-discrimination

16

laws do not require an employer to make proper decisions, only non-retaliatory ones. See id. (citing Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991)). Willis must do more than argue that Cleco made an incorrect decision.

Willis argues that the court must reject Cleco's reasons because it indicated each candidate's race, sex, and age for the positions for which she applied. See Record Document 126, Ex. E. Willis's Exhibit E contains emails sent by Felice Burton ("Burton"), Cleco's Employment Coordinator, to other Cleco employees indicating the individuals applying for certain positions. On the printed emails are handwritten notes by Burton which indicate each candidate's race, sex, and age. Willis argues that Cleco's assertion that the hiring supervisors did not see these handwritten notes is "nonsensical" because the emails were addressed to the hiring supervisors and no one else. She also contends that "the fact that information on [the] race, sex and age of Vanda Willis was provided to the hiring supervisor within hours of the closing of the application suggest that the information went only to the hiring supervisor." Id., Memorandum in Opposition at 8-9. Willis then concludes that Cleco's reasons are "pretextual because Defendant's own Exhibit E contradict Cleco's claim." Id.

Here, the only thing nonsensical is Willis's argument. Willis's premise that the hiring supervisors saw the handwritten notes because the emails were addressed to

17

them is fallacious. Obviously, the handwritten notes would not have been on the emails before they were actually sent. Although the court is not an expert in information technology matters, it knows of no ordinary way a handwritten note can be transmitted in an email communication. Regardless, Burton testifies in her declaration that, once a job posting closed, she would draft, sign, and send an email to the hiring supervisors indicating the names of the individuals who applied. See Record Document 119, Ex. F at 2. A copy of that email would then be placed in the job log. After a selection was made, a panel would review information regarding the application process which included, among other things, each candidate's race, sex, and age. Sometimes this information would be typed on a separate sheet of paper and at other times Burton would write the information next to the candidate's name on a copy of the email previously mentioned. See id. Accordingly, as Willis has provided no tenable evidence to the contrary, the court finds that information regarding Willis's race, sex, and age was not sent to the hiring supervisors in this manner before a selection was made.

Furthermore, Willis makes an unconvincing leap of logic to conclude that just because the emails were sent to the hiring supervisors within hours of closing means that the hiring supervisors were the only ones to receive that information. Willis's ultimate conclusion of pretext is a similar leap. The presence of handwritten notes

18

indicating a candidate's race, sex, and age is not automatically indicative of racial discrimination, nor does this evidence alone lead to a reasonable inference of discrimination.   This information can be recorded and kept for many different purposes.  For example, Cleco maintains that as a federal contractor it is required "to keep information on applicant flow data, including internal promotions, by race and sex for purposes of maintaining an affirmative action program."  Record Document 130 at 5. As for the other evidence, documents from Willis's various declarants, they merely assert in conclusory fashion without personal knowledge that hiring supervisors received these forms before hiring decisions were made.

Additionally, Willis never even addressed the differences between her qualifications and those that were hired.  Based upon the evidence presented, Willis has not made a showing that she was clearly more qualified than those that were selected for the positions.  For all these reasons, Willis has clearly failed to carry her burden of showing that Cleco's reasons were pretextual.

## C.     Sex Discrimination And Other Miscellaneous Matters.

Willis attempts to bring a cause of action for sex discrimination against Cleco. See Record Document 126, Memorandum in Opposition at 8.  She has not mentioned a sex discrimination claim any time prior to this motion for summary judgment.  The

19

court previously acknowledged that Willis conceded she failed to exhaust her administrative remedies under Title VII and that those claims are not before this court; therefore, she cannot bring a sex discrimination claim under Title VII. See Record Document 105 at 2. She also cannot bring such a claim under Louisiana Revised Statute 23:303 since the court has already determined that any claim under that provision has prescribed. See id. at 12. In addition, because sex discrimination claims are not actionable under section 1981, the court rejects this claim. See Bobo v. ITT, Cont'l Baking Co., 662 F.2d 340, 341 (5th Cir. 1981).

Also, for the first time, Willis mentions a claim for hostile work environment. See Record Document 126, Memorandum in Opposition at 8. In order to establish a hostile working environment claim, Willis must prove that:

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.
>
> In determining whether a workplace constitutes a hostile work environment, courts must consider the

20

> following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quotations and citations omitted). Among the litany of allegations in support of a hostile work environment claim, none include any conduct to which she was personally subjected. As a result, Willis has failed to establish the second element of her hostile work environment claim.[11]

## III. CONCLUSION

Based on the foregoing analysis, Cleco's second motion for summary judgment (Record Document 119) is **GRANTED**. The court finds there is no genuine dispute as to any material fact with regard to any of Willis's claims.

An judgment consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 22 day of February, 2013.

JUDGE TOM STAGG

---

[11] Even if Willis's hostile work environment claim were meritorious, the court would still have rejected it because she had failed to raise the claim in her complaint and failed to timely amend her complaint.

21